IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

2019 SEP 10 AM 11: 32

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ gms
DEPUTY

| | | |
|---|---|---|
| CHARLES MARQUEZ, | § | |
| Reg. No. 99443-280, | § | |
| Movant, | § | |
| | § | EP-18-CV-112-FM |
| v. | § | EP-12-CR-1351-FM-1 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Movant Charles Marquez challenges his consecutive life sentences for sex trafficking through a pro se motion under 28 U.S.C. § 2255 (ECF No. 348).[1]   For the reasons discussed below, the Court will deny the motion.   The Court will additionally deny Marquez a certificate of appealability.

## BACKGROUND AND PROCEDURAL HISTORY

On December 19, 2012, a grand jury in the Western District of Texas returned a superseding indictment against Marquez and co-defendant Martha Jimenez Sanchez.   Superseding Indictment, ECF No. 74.   It charged Marquez with sex trafficking children, in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), and (b)(2) (Count One); sex trafficking by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), and (b)(1) (Counts Two and Three); transporting for prostitution, in violation of 18 U.S.C. § 2421 (Count Four); coercing and enticing a person to travel in interstate commerce to engage in prostitution and sexual activity, in violation of 18 U.S.C. § 2422(a) (Count Five); conspiring to coerce and entice a person to travel in interstate commerce to engage in prostitution and sexual activity, in

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in EP-12-CR-1351-FM-1.   Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

violation of 18 U.S.C. § 371 (Count Six); and importing an alien for immoral purpose, in violation of 8 U.S.C. § 1328 (Count Seven).

Marquez pleaded not guilty and proceeded to trial. The evidence presented established Marquez, for several years, ran an escort service in El Paso, Texas. He recruited women through advertisements in Spanish language newspapers in El Paso and Juarez, Mexico. He sought desperate and vulnerable women who could not work legally in the United States. He invited the women who answered his advertisements to meet him for interviews in the United States. During the interviews, he told them something about the job, but not everything. As a result, some of the women first learned the job involved prostitution when they found themselves in hotel rooms confronted by men asking for sex.

Marquez sexually assaulted many of the women or coerced them into having sex with him. On one occasion, he recruited a sixteen-year-old girl identified as C.V.C., raped her, and scheduled her to have sex with numerous men. He knew she was sixteen, but he told her not to disclose this fact to anyone else.

During a joint Federal Bureau of Investigation and Homeland Security investigation into Marquez's activities, the agents identified thirty women who worked for Marquez as prostitutes.

Marquez advertised for clients for the women on the internet. When he received responses, he sometimes drove the women to meet their clients at residences or hotel rooms. He took women on at least three trips from El Paso to Albuquerque, New Mexico. His third trip to Albuquerque ended when police officers arrested one of his employees for prostitution. He also transported at least one former employee from Mexico into Texas after he demanded that she return to work for him as a prostitute.

Recorded phone calls, phone records, text messages, and ledgers also established that Marquez ran a prostitution business. Text messages included over 100 evaluations by one client about the sexual

performance of women who worked for Marquez. The ledgers contained the names of clients, the names of the women, and the amounts the clients paid for the services provided by the women.

Marquez kept the women working for him through threats of violence or deportation. He punished women who angered him by sending them more than the usual number of clients. He threatened women who wanted to leave by implying he had friends who could arrest or deport them. He even told one woman he had friends in a drug cartel in Juarez. Thus, he made the women believe he would harm them if they ever crossed or left him.

Once both parties rested, Marquez moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 on all counts of the superseding indictment. The Court denied the motion as to all counts except Count Three. The Court reserved ruling on the motion as to Count Three.

On November 21, 2013, after a nine-day trial, the jury found Marquez guilty on all seven counts of the superseding indictment. The Court then granted the motion for a judgment of acquittal as to Count Three. Order, ECF No. 232.

Marquez was sentenced on September 3, 2014 to life imprisonment on Counts One and Two, 120 months' imprisonment on Count Four, 240 months' imprisonment on Count Five, 60 months' imprisonment on Count Six, and 120 months imprisonment on Count Seven. J. Crim. Case, ECF No. 314. Each of the individual sentences fell within the advisory sentencing guideline range. The Court ordered the sentences to run consecutively.

Marquez filed a timely notice of appeal. He asserted four claims:

(1) the district court abused its discretion by admitting as intrinsic evidence that he had sexual intercourse with an underage girl (C.V.C.), and by admitting as extrinsic, for the purpose of demonstrating knowledge and intent under Federal Rule of Evidence 404(b), evidence that he was separately investigated in 1998 and 1999 for running an escort service; (2) his due process rights were violated by the Government's failure to correct

false testimony; and (3) his sentence was substantively unreasonable. Although Marquez's brief mentions a fourth issue, that his convictions should be reversed based on cumulative error, he fails to adequately brief this issue and has accordingly abandoned it.

*United States v. Marquez*, 667 F. App'x 496, 497 (5th Cir. 2016). The Fifth Circuit Court of Appeals rejected Marquez's claims and affirmed his convictions and sentences on August 25, 2016. *Id.*, at 498. The Supreme Court denied his petition for a writ of certiorari on March 27, 2017. *Marquez v. United States*, 137 S. Ct. 1387 (2017).

Marquez certified he mailed his § 2255 Motion on March 19, 2018, but it was not filed in the Court until April 2, 2018. Mot to Vacate, ECF No. 348. He alleged eleven grounds for relief:

Claim I - The Superseding Indictment was fatally defective.

Claim II - The Court constructively amended Count One of the Superseding Indictment by improperly instructing the jury.

Claim III - Trial counsel provided constitutionally ineffective assistance by (1) failing to oppose the government's motion in limine; (2) waiving opening statement; (3) failing to conduct relevant cross-examination and to properly impeach witnesses; (4) failing to call alibi witnesses; (5) failing to present witnesses to establish a defense; (6) failing to interview eyewitnesses; (7) failing to expose prosecutorial misconduct; (8) failing to challenge perjured testimony; (9) failing to object to the improper questioning of H.C.P.; (10) failing to object to the prosecutor's reference to rape in his questioning of H.C.P.; and (11) failing to demand non-testimonial evidence he engaged in the prostitution business.

Claim IV - Trial counsel failed to challenge the defective superseding indictment.

Claim V - Trial counsel failed to demand the disclosure of agreements between the Government and its witnesses.

Claim VI - Trial counsel failed to demand the disclosure of the agreement between the Government and Ana Rosa Quezada.

Claim VII - Trial counsel failed to demand the disclosure of the agreement between the Government and Hossein Tabatabain.

Claim VIII - Trial counsel failed to demand the disclosure of the agreement between the Government and Doctor Durwood Spencer.

-4-

Claim IX - Trial counsel failed to demand the disclosure of the agreement between the Government and Maria and Ronald Blake.

Claim X - The cumulative effect of the foregoing ineffectiveness of trial counsel rendered the trial fundamentally unfair.

Claim XI- Appellate counsel provided ineffective assistance by (1) refusing to raise an issue that required reversal on direct appeal; (2) failing to challenge the sufficiency of the evidence; (3) failing to address the ineffective assistance of trial counsel at sentencing; (4) failing to investigate the entire court record; (5) failing to challenge the sentences; and (6) failing to challenge the sufficiency of the evidence to support the conspiracy conviction.

Marquez asks the Court to vacate the convictions and sentences and schedule him for a new trial.

## LEGAL STANDARD

After a defendant has been convicted and exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)). A § 2255 motion "'provides the primary means of collateral attack on a federal sentence.'" *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (quoting *Cox v. Warden*, 911 F.2d 1111, 1113 (5th Cir. 1990)). Relief under § 2255 is warranted for errors that occurred at trial or at sentencing. *Ojo v. INS*, 106 F.3d 680, 683 (5th Cir. 1997). But it "'is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (emphasis added) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)). Before a court will grant relief pursuant to § 2255, a movant must establish (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is

otherwise subject to collateral attack.  *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

Ultimately, the movant bears the burden of establishing his claims of error by a preponderance of the evidence.  *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) (citing *United States v. Kastenbaum*, 613 F.2d 86, 89 (5th Cir. 1980)).  A court may deny a § 2255 motion without a hearing if "the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990) ("Faced squarely with the question, we now confirm that § 2255 requires only conclusive evidence—and not necessarily direct evidence—that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").  "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."  *See* 28 U.S.C. foll. § 2255 Rule 4(b).  When a court finds that the movant is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  Thus, the Court has "'broad and flexible power . . . to fashion an appropriate remedy.'"  *United States v. Stitt*, 552 F.3d 345, 355 (4th Cir. 2008) (quoting *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997)); *see also Andrews v. United States*, 373 U.S. 334, 339 (1963) ("[T]he provisions of the statute make clear that in appropriate cases a § 2255 proceeding can also be utilized to provide a . . . flexible remedy."); *United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000) ("As an initial matter, we note the broad leeway traditionally afforded district courts in the exercise of their § 2255 authority.   . . . This is so because a district court's power under § 2255 'is

derived from the equitable nature of habeas corpus relief.'") (quoting *United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997)).

## ANALYSIS

**Claim I - The Superseding Indictment was fatally defective.**
**Claim II - The Court constructively amended Count One of the Superseding Indictment by improperly instructing the jury.**

Marquez first contends that "the [superseding] indictment is fatally defective." Mem. in Supp. 5, ECF No. 349. He makes three sub claims to support his contention. First, he asserts the superseding indictment lacks specific facts and is, therefore, legally insufficient. *Id.*, at 8–13. Second, he maintains Counts Six and Seven are multiplicious. *Id.*, at 20–21. Finally, he argues the superseding indictment was obtained through fraudulent misrepresentations. *Id.*, at 14–20.

In Claim II, Marquez argues the Court's instruction permitted the jury to convict on Count One—charging him with sex trafficking children, in violation of 18 U.S.C. § 1591—on a basis permitted by the statute, but not charged in the superseding indictment. *Id.*, at 44–47. He relies on the Fifth Circuit's ruling in the direct appeal of Timothy McCullouch in *United States v. Lockhart*, 844 F.3d 501 (5th Cir. 2016).[2]

---

[2] The element at issue in *Lockhart* involved § 1591's scienter requirement. *See United States v. Garcia–Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013) (stating that the defendant's mens rea is an essential element of an offense under § 1591). Subsection (a) "allow[ed] the Government to prove scienter by showing that the defendant (1) knew the victim was underage, [or] (2) recklessly disregarded that fact." *Lockhart*, 844 F.3d at 513–14. Subsection (c)—not alleged in the indictment— added that "[i]n a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person . . . the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years." 18 U.S.C. § 1591(c). The Fifth Circuit vacated McCullouch's conviction because the Court's jury instruction included the "reasonable opportunity to observe" language from the statute, but the indictment did not. *Id.* at 515–16. The Fifth Circuit reasoned that it was "conceivable that someone could recklessly disregard a person's age without having a reasonable opportunity to observe him or her." *Id.* Thus, it concluded, the Court's instruction permitted the jury to convict on a basis that was permitted by the statute, but not charged in the indictment. *Id.* The superseding indictment charged Marquez under Subsection (a), but the Court's jury instruction included the "reasonable opportunity to observe" language from Subsection (c). The Government conceded that *Lockhart* made the addition of Subsection (c) language in the jury charge a constructive amendment. Gov't's Resp. 22, ECF No. 374-1. However, *Lockhart* was decided after the Fifth Circuit Court of Appeals denied Marquez's appeal.

A § 2255 motion is not a substitute for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991). When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a movant must either (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error; or (2) show that he is "actually innocent" of the crime for which he was convicted. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). The cause-and-actual-prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).

The "cause" standard requires the movant to show that "some objective factor external to the defense" prevented him from timely raising the claims he now advances. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective factors that constitute cause include interference by officials that make compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense. *Id.*

"A mere possibility of prejudice will not satisfy the actual prejudice prong of the cause and prejudice test," and a movant must instead "'shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Shaid*, 937 F.2d at 231 (quoting *Frady*, 456 U.S. at 170).

If the movant does not demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, then he is procedurally barred from attacking his conviction or sentence. *United States v. Drobny*, 955 F.2d 990, 994–95 (5th Cir. 1992).

"[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496, (1986). To establish actual innocence, petitioner must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327–328 (1995) (citations and quotation marks omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Marquez has not alleged or shown that some objective factor prevented him from timely raising his claims concerning the superseding indictment at his trial or in a direct appeal. He has not alleged or shown that the factual basis for his claims were not available at the time of his trial. He has also not alleged or shown that the purported defects infected his entire criminal proceeding with error of constitutional dimension. Thus, he has not shown cause for failing to raise his claims at his trial or in a direct appeal, and he has not shown actual prejudice resulting from the alleged error. Furthermore, the evidence against Marquez was overwhelming. The Court finds Marquez is procedurally barred from pursing Claims I and II in a § 2255 motion.

**Claim III - Trial counsel provided constitutionally ineffective assistance by failing to oppose the government's motion in limine; waiving opening statement; failing to conduct relevant cross-examination and to properly impeach witnesses; failing to call alibi witnesses; failing to present witnesses to establish a defense; failing to interview eyewitnesses; failing to expose prosecutorial misconduct; failing to challenge perjured testimony; failing to object to the improper questioning of H.C.P.; failing to object to**

**the prosecutor's reference to rape in his questioning of H.C.P.; and failing to demand non-testimonial evidence that he engaged in the prostitution business.**

Marquez makes eleven separate claims of ineffective assistance against his trial counsel. Mem. in Supp. 47–70, ECF No. 349. First, he asserts his counsel failed to oppose government's motion in limine. *Id.*, at 26–28. Second, he contends his counsel erred by waiving an opening statement. *Id.*, at 28–30. Third, he maintains his counsel failed to conduct relevant cross-examination and impeach witnesses. *Id.*, at 30–33. Fourth, he avers his counsel failed to call alibi witnesses. *Id.*, at 33–34. Fifth, he asserts his counsel failed to present witnesses to establish a defense. *Id.*, at 34. Sixth, he claims his counsel also failed to interview eyewitnesses. *Id.* Seventh, he alleges his counsel failed to expose Government's *Brady* violations. *Id.*, at 35–37. Eighth, he insists his counsel failed to challenge perjured testimony. *Id.*, at 37–38. Ninth, he protests his counsel's failure to object to the prosecutor's reference to rape during his questioning of H.C.P. *Id.*, at 38–40. Tenth, he argues his substantial rights were prejudiced by the prosecutor's remark about rape. *Id.*, at 40. Finally, he complains about his counsel's failure to demand material evidence beyond testimony. *Id.*, at 40–41.

A movant may collaterally attack a sentence by alleging his counsel failed to meet the Sixth Amendment requirement for an accused "to have the assistance of counsel for his defense." U.S. CONST. amend. VI. The Sixth Amendment not only guarantees a criminal defendant the right to counsel, but also the right to the effective assistance of counsel. *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). A court analyzes an ineffective assistance of counsel claim presented in a § 2255 motion under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001).

Under the *Strickland* test, to succeed on an ineffective assistance of counsel claim, a movant

must prove: (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94. In other words, a movant must show that his counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001). The burden of proof is on the movant alleging ineffective assistance. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999). If the movant fails to prove one prong, it is not necessary to analyze the other. *See Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### 1. Failure to oppose Government's Motion in Limine

Marquez asserts his trial counsel were ineffective because, had they been effective, they "would have objected to the government's motion in limine, precluding the defense from advancing their main defense . . . to disprove force, fraud, and coercion." Mem. in Supp. 47, ECF No. 349.

Marquez's assertion is factually incorrect. His trial counsel, Richard Jewkes, correctly notes:

> [O]n October 25, 2013, Ms. Harbour-Valdez and I filed Defendant's Response to the Government's Motion in Limine raising objections and/or responding to twelve grounds raised by the government in its motion (ECF Doc. 184). On October 30, 2018 [sic], the Court issued an order granting in part and denying in part the government's motion in limine. (ECF Doc. 186). Mr. Marquez's claim that we did not oppose the government's motion in *limine* is unfounded.

Gov't Resp., Ex. 32 (Aff. of Richard Jewkes), ECF No. 374-31. *See also id.*, Ex. 33 (Def.'s Resp. To Gov't's Motion in Limine), ECF No. 374-32 ("Evidence of any Victim's Sexual Behavior or

Predisposition. This topic will be addressed in Defendant's forthcoming Motion Pursuant to Rule 412."); Ex. 34 (Order Granting in Part and Denying in Part Gov't's Mot. in Limine), ECF No. 374-33.

Furthermore, the evidence Marquez sought to introduce at trial—proof that some of the witnesses were professional prostitutes—was inadmissible under the Federal Rules of Evidence. *See* Fed. R. Evid. 412(a) ("**Prohibited Uses**. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition."). "[E]vidence of the victims' pre-and-post-indictment acts of prostitution would be irrelevant to this case as it does not 'make . . . more or less probable' the fact that [Movant] caused [his] victims to engage in a commercial sex act during the time period alleged in the indictment." *Lockhart*, 844 F. 3d at 510. *See also United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009) ("Whether the children engaged in acts of prostitution before or after their encounters with Elbert is irrelevant, and would only prove other people may be guilty of similar offenses of recruiting, enticing, or causing these victims to engage in a commercial sex act."); *United States v. Valenzuela*, 495 F. App'x 817, 820 (9th 2012) ("evidence of prior prostitution is irrelevant to whether the victims consented to working as prostitutes").

Consequently, Marquez cannot meet either prong of the *Strickland* test. His counsel did in fact fight the motion in limine; thus, their performance was not deficient. Even if his counsel had failed to object to the motion in limine, he cannot show prejudice; the evidence he wanted to introduce was not relevant under the Federal Rules of Evidence. As such, Marquez's claim lacks merit.

### 2. Waiving an opening statement

Marquez claims his trial counsel were ineffective for their failure to make an opening statement in order to rebut the statements made by the Government. Mem. in Supp. 49–53, ECF No. 349.

As a matter of law, the Fifth Circuit has found "that waiver of opening statement is not unreasonable, given the presumption of competence afforded Counsel." *King v. Davis*, 883 F.3d 577, 593 (5th Cir. 2018). Moreover, counsel choosing to present a different defensive theory than the one a movant wanted, "does not amount to ineffective assistance." *Id.* at 587 (quoting *Coble v. Quarterman*, 496 F.3d 430, 437 (5th Cir. 2007)). So, as a matter of law, counsel's decision to waive opening does not establish their performance was deficient.

Marquez specifically claims his counsel should have made an opening statement to point out he could not have known C.V.C. was a juvenile, as she was a "young woman with an ample and intense career of prostitution." Mem. in Supp. 49–51, ECF No. 349. He also asserts his counsel should have rebutted the Government's characterization of the witnesses against Marquez as "victims," because they were "experienced prostitutes." *Id.*, at 52–53. As the Court noted above, the Federal Rule of Evidence 412 precluded Marquez's counsel from discussing the sexual behavior or predisposition of the victims. Consequently, even if trial counsel had given an opening statement, they could not have described the victims as "experienced prostitutes."

Marquez also suggests an opening statement should have discussed the underage victim's employment as a bartender. *Id.*, at 50. Presumably, the underage victim—C.V.C.—would have produced a fake identification card to work serving alcohol. But the evidence established C.V.C. did not present an identification card to obtain her bartending job. *See* Gov't's Resp., Ex. 35 (Cross-examination of Special Agent Anthony Miranda), pp. 76–77, ECF No. 374-34. So C.V.C.'s employment as a bartender was irrelevant to the question of whether she used false identification to establish her age.

Finally, Marquez suggests an opening statement should have discussed how he met C.V.C.

Mem. in Supp. 50, ECF No. 349. The only way Marquez could have presented this information to the jury was if he testified. As Jewkes points out, he and his co-counsel were not sure if Marquez would testify at the time of making the opening statement. Thus, to suggest facts that could only have come from Marquez's testimony would have "been foolhardy and counterproductive." Gov't's Resp., Ex. 32 (Aff. of Richard Jewkes), ECF No. 374-31.

Trial counsel's failure to make an opening statement was neither deficient nor prejudicial to Marquez's cause. He is not entitled to relief on this claim.

### 3. Failure to conduct relevant cross-examination and to properly impeach witnesses

Marquez contends his counsel were ineffective when they failed to properly cross-examine and impeach witnesses. Mem. in Supp. 54–59, ECF No. 349. He provides specific questions he believes his counsel should have asked the witnesses.

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. State of La.*, 350 U.S. 91, 101 (1955)). "Counsel [are] entitled to formulate a strategy that [is] reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington v. Richter*, 562 U.S. 86, 107 (2011). The manner and extent of cross-examination is a matter of trial strategy. *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007). "A few cherry-picked examples of mistakes or bad answers over the course of a long trial do not amount to constitutionally ineffective lawyering. Speculating about the effect of tinkering with the cross-examination questions is exactly the sort of hindsight that *Strickland* warns against." *Castillo v. Stephens*, 640 F. App'x 283, 292 (5th Cir.), *cert. denied sub nom. Castillo v. Davis*, 137 S. Ct. 279

-14-

(2016).

Marquez speculates about what would have happened if his counsel had asked the questions he now provides. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Marquez's guesswork, without more, does not overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct. Marquez fails to meet the first prong of *Strickland*.

Moreover, looking at Marquez's specific claims, he was not prejudiced anyway.

Marquez claims his trial counsel should have questioned C.V.C. about the identification she used to get her bartending job. Mem. in Supp. 56, ECF No. 349. He speculates that C.V.C. would have lied about possessing a fake ID. But his counsel brought up C.V.C.'s employment as a bartender in their cross-examination of Anthony Miranda, a special agent with Homeland Security Investigations assigned to the Border Security Task Force to investigate human trafficking:

> Q. What about the first time you met CVC . . . named in count one of the indictment, did you ask to see her identification?
> A. Excuse me, her what?
> Q. Her identification?
> A. Yes.
> Q. It came to your knowledge that at various times she used false identification, correct?
> A. No.
> Q. No? Never?
> A. Not to my knowledge.
> Q. Did she ever hold herself out to be over the age of 18?
> A. I -- yes, she did.
> Q. So that we understand each other, she held herself out to other people to be over the age of 18?
> A. Yes, she did.
> Q. She worked for a brief time at a bar?
> A. That's correct.
> Q. Yes?
> A. Yes.

Q. Presumably dispensing alcohol?

A. I don't know if she dispensed alcohol.

Q. She didn't really look 16, did she?

MR. NEWAZ: Objection, it calls for -- I mean, he is not an expert on forensics for what a juvenile looks like.

THE COURT: He can ask the witness an opinion.

MR. JEWKES: Yes, sir.

THE COURT: You haven't laid the predicate, so the objection is sustained.

BY MR. JEWKES:

Q. All right, sir. You had the opportunity to speak to and observe CVC . . . ?

A. Yes.

Q. And did you form an opinion as to whether or not she looked her age or looked older?

A. Yes, I did.

Q. And what was that opinion?

A. She looked older.

Q. For a young lady, she looked, acted fairly mature, did she not?

A. She looked mature.

Gov't's Resp., Ex. 35 (Cross-examination of Special Agent Anthony Miranda), pp. 76–77, ECF No. 374-34.

Marquez suggests his counsel should have asked C.V.C. if B.G.G.T. and A.R.Q.P. were victims. Mem. in Supp. 56, ECF No. 349. The Government presumably would have objected to speculation, relevance, and the question invading the province of the jury. *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008).

Marquez submits his counsel should have asked H.C.P. about the phone number she called on the day of her arrest to show she was working as a prostitute for someone else. *Id.* Unless this question would have impeached something H.C.P. said on direct examination—which Marquez does not allege—the motion in limine would have precluded this question.

Marquez states his counsel should have impeached R.I.A.O. for her statement on direct that she would not have accepted his job offer if she had known it entailed prostitution. *Id.* However, Marquez

provides no explanation as to how that line of questioning would have impeached R.I.A.O. Assuming the impeachment involved R.I.A.O.'s subsequent employment, the motion in limine would have precluded that line of questioning.

Marquez proposes his counsel should have asked R.I.A.O. about why she started collecting information against him prior to his arrest. *Id.* He provides no explanation as to why he believes that question would have been relevant.

Marquez contends his counsel should have impeached Special Agent Miranda about H.C.P. working as a prostitute for someone else at the time of her arrest. *Id.* Again, the motion in limine would have precluded that line of questioning.

Marquez maintains his counsel could have impeached Special Agent Miranda for his lack of knowledge about whether C.V.C. dispensed alcohol, despite the evidence which showed C.V.C. worked as a bartender. *Id.*, at 56–57. A review of Special Agent Miranda's testimony shows he knew of C.V.C.'s bartending job. Gov't's Resp., Ex. 35 (Cross-examination of Special Agent Anthony Miranda), pp. 76–77, ECF No. 374-34. But he clearly said he did not know if C.V.C. dispensed alcohol. *Id.*, at 77. Special Agent Miranda's report of investigation, provided to Marquez's counsel in the discovery materials, does not comment on C.V.C. dispensing alcohol. *Id.*, Ex. 29 (Report of Investigation), p. 4, ECF No. 374-28. He only notes she "was never asked to present an identification card or questioned about her age for employment." There were no inconsistencies between Special Agent Miranda's testimony and the discovery materials provided to Marquez's counsel. Consequently, Marquez's proposed line of questioning would not provide a foundation for impeaching Special Agent Miranda.

Marquez avers his counsel should have asked Special Agent Miranda about the type of

identification C.V.C. needed to obtain a bartender job.  Mem. in Supp. 57, ECF No. 349.  Again, as the discovery materials disclosed, C.V.C. told the investigators from Homeland Security and the Federal Bureau of Investigation—not the Texas Alcoholic Beverage Commission—her employers did not ask her for an identification card before they employed her as a bartender.  Questioning Special Agent Miranda about the identification requirements for employment as a bartender would have produced neither relevant evidence nor a basis for his impeachment.

Marquez suggests his counsel should have asked Special Agent Miranda about R.I.A.O.'s involvement with Maria Blake.[3]  *Id.*  But evidence of R.I.A.O. working as a prostitute for Blake after working as a prostitute for Marquez was precluded by the motion in limine, and Marquez's counsel could not have inquired about it.

Marquez maintains his counsel should have asked each victim who the other "real" victims were in this case.  *Id.*  But this question would have raised relevance and speculation objections from the prosecution.  It was for the jury, as the finders of fact, to decide who the "victims" were, not the witnesses.  *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("questions which would merely allow the witness to tell the jury what result to reach are not permitted").

Marquez then lists the various criminal charges against the Government's witnesses and the purported benefits they received as a result of their cooperation in his prosecution.  *Id.*, at 57–59.  Testimony about the benefits these witnesses received was elicited at trial.  The jury chose to believe them anyway and found Marquez guilty on all counts of the indictment.

Marquez cannot show any prejudice for his counsel's failure to ask these questions and, as a result, cannot meet the second prong of *Strickland.*  Consequently, he has not met his burden of

---

[3] *United States v. Blake*, EP-14-CR-1171-KC (W.D. Tex.).

showing his counsel provided ineffective assistance.

### 4. Failure to call alibi witnesses

Marquez claims his counsel's failure to call "alibi witnesses" provides proof of their ineffectiveness. *Id.*, at 59. Marquez's claim is internally inconsistent as he suggests his alibi witnesses—who would presumably testify he was not a pimp—were his employees and he was their pimp. Moreover, it is unclear how his counsel could produce "alibi" witnesses for well-documented crimes which spanned years.

As a preliminary matter, "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). "Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

Marquez offered no explanation as to the availability and potential testimony of his alibi witnesses. He did give his counsel a list of eleven witnesses. Gov't Resp., Ex. 32 (Aff. of Richard Jewkes), ECF No. 374-31. According to his counsel, one refused to testify, five could not be located, four denied knowing Marquez, and one had nothing to offer in the way of alibi testimony. *Id.*

Counsel is not deficient for failing to produce uncooperative, unavailable or uninformed witnesses. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). "[Movant's] own speculations as to what [a witness] might have been able to contribute through [their]testimony are insufficient to

-19-

establish a prima facie showing that [the witness'] testimony would have substantially altered the outcome of the trial." *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983). As such, Marquez cannot meet his burden in showing prejudice. He has not shown his counsel provided ineffective assistance.

### 5. Failure to present witnesses to establish a defense

Marquez argues that his counsel's failure to have the Court issue bench warrants for witnesses who failed to show up at his trial in response to defense subpoenas makes them ineffective. Mem. in Supp. 60–61, ECF No. 349.

Marquez provides no summary of their testimony. Thus, he cannot prove prejudice. *Day*, 566 F.3d at 538. Furthermore, counsel "cannot be faulted for the default of an errant witness." *Cockrell*, 720 F.2d at 1427. And Jewkes points out that of the eleven witnesses Marquez suggested, none provided a viable defense. Gov't's Resp., Ex. 32 (Aff. of Richard Jewkes), ECF No. 374-31. Yet, Jewkes and his co-counsel still put on four witnesses in Marquez's defense. Consequently, Marquez cannot meet his burden under either prong of *Strickland*.

### 6. Failure to interview eyewitnesses

Marquez claims his counsel were ineffective for failure to interview witnesses that would have testified favorably for him. Mem. in Supp. 61–61, ECF No. 349.

Jewkes notes in his affidavit that "[n]one of the eleven witnesses proposed by Mr. Marquez appeared to be capable of providing sworn testimony that would establish an arguable defense for him." Gov't's Resp., Ex. 32 (Aff. of Richard Jewkes), p. 3, ECF No. 374-31. And Marquez again relies on conjecture and speculation about the testimony of witnesses, which is "insufficient to establish a prima facie showing that [the witness'] testimony would have substantially altered the outcome of the trial."

*Cockrell*, 720 F.2d at 1427. As such, he has failed to meet his burden of showing his counsel provided ineffective assistance.

### 7. Failure to expose prosecutorial misconduct

Marquez contends his counsel were ineffective for their failure to "expose the prosecutorial misconduct [of] suppressing exculpatory evidence in violation of *Brady*." Mem. in Supp. 62–63, ECF No. 349. Notably, Marquez gleans the purported exculpatory information from discovery materials given to his counsel before trial.

#### a. H.C.P.'s employment

Marquez first alleges that the Government knew, but failed to disclose, that H.C.P. was working as a prostitute for herself or someone else at the time of her arrest. Mem. in Supp. 62, ECF No. 349.

In a letter dated October 11, 2013, the Government relayed to Marquez's counsel that H.C.P. "was charged in Cause #20110C07770 with Prostitution in County Court at Law #2 in El Paso County, Texas," and that those charges were subsequently dismissed by the El Paso County District Attorney's Office. Gov't's Resp., Ex. 26 (Dep't of Justice Letter, Oct. 11, 2013), p. 7, ECF No. 374-26. Hence, the Government disclosed information surrounding H.C.P.'s arrest in pre-trial discovery.

"The rule of *Brady v. Maryland* . . . arguably applies in three quite different situations. Each involves the discovery, after trial, of information which had been known to the prosecution *but* unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (*emphasis added*). "Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (quoting *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir.1993)).

In this case, Marquez's counsel received H.C.P.'s arrest information in discovery, and Marquez

-21-

either knew, or should have known, if H.C.P. was working for him at the time of her arrest. Indeed, there was no *Brady* violation. Hence, Marquez has not met his burden of showing his counsel were ineffective.

### b. C.V.C.'s employment

Marquez contends the Government suppressed information about C.V.C. working as a bartender, working for Maria Blake as a prostitute, and receiving benefit for her testimony against him. Mem. in Supp. 62, ECF No. 349. But, once again, Marquez's counsel had information about C.V.C. and her employment in their possession before trial:

> C.V.C. was employed as a Bartender at both El Escandalo Night Club and Take Five Piano Lounge and she earned six (6) dollars an hour plus tips. C.V.C. was never asked to present an identification card or questioned about her age for employment at either establishment. C.V.C. was never offered work as a prostitute at either establishment and has not been offered employment anywhere else as a prostitute since she last worked for MARQUEZ.

> C.V.C. worked for Jessica LNU [also known as Maria Blake] before she worked for MARQUEZ. C.V.C. worked for [Blake] in the summer of 2011.

Gov't's Resp., Ex. 29 (Report of Investigation), p. 4, ECF No. 374-28. The fact that Marquez had possession of this information before his trial is evidence that it was not suppressed. Furthermore, Marquez provided no evidence the Government gave C.V.C. any benefit to gain her cooperation, and there apparently was none. There was no *Brady* violation. Hence, Marquez cannot show his counsel were ineffective.

### c. B.G.G.T. and A.R.Q.P.'s employment

Marquez claims the Government suppressed information about B.G.G.T. and A.R.Q.P. working for Maria Blake. Mem. in Supp. 62–63, ECF No. 349.

But Marquez received information about Blake's employees through pre-trial discovery:

-22-

> CVC recognized a photograph of MARIA AMALIA BLAKE . . . as the woman she knew as JESSICA last name unknown (LNU) . . . . JESSICA LNU [was] a pimp that CVC met through "Martha" . . . . "ANA" (identified as [A.R.Q.P.]) and "GABBY, aka "BRENDA" [B.G.G.T.], which were the girls CVC resided with when she worked as a prostitute for [Marquez].

Gov't's Resp., Ex. 39 (Report of Investigation), p. 1, ECF No. 374-38. Aside from the one remark made by C.V.C. regarding the two women working for Blake, no other information existed. Consequently, the Government did not suppress the information, Marquez cannot show prejudice, and he cannot meet his burden of establishing his counsel provided ineffective assistance.

### d. Relationship between B.G.G.T. and the other victims

Marquez maintains the Government "openly concealed" *Brady* material related to B.G.G.T.'s close relationship with the other victims. Mem. in Supp. 53, ECF No. 349. Marquez is unclear as to how anyone can "openly conceal" *Brady* material. And Marquez provides no explanation as to what information he believes was suppressed and what impact the suppressed information had on his trial. As such, Marquez cannot meet his burden of showing his counsel provided ineffective assistance.

### 8. Failure to challenge perjured testimony

Marquez contends his counsel were ineffective for failing to challenge the perjured testimony of R.I.A.O., H.C.P., and C.V.C. *Id.*, at 63–64. However, he fails to identify where R.I.A.O., H.C.P. and C.V.C. offered perjured testimony. He suggests C.V.C. rendered "a total (*sic*) different testimony regarding her activities of prostitution" at the time of her arrest. *Id.* But this is statement is factually incorrect because C.V.C. was never arrested. It is possible Marquez means R.I.A.O., as he mentions her work for Maria Blake. But again, R.I.A.O. was not arrested.

In any event, Marquez provides nothing more than conclusory statements about perjured testimony. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) ("We construe pro se § 2255

petitions liberally. 'At the same time, however, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.' *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989). [Defendant's] vague references to his sixth amendment rights are insufficient to raise the issue."). Thus, Marquez cannot meet his burden of showing his counsel provided ineffective assistance.

### 9. Failure to object to the improper questioning of H.C.P.

Marquez claims his counsel were ineffective for failing to object to Government's use of the term "rape" in describing a sexual encounter between Marquez and H.C.P. Mem. in Supp. 65–67, ECF No. 349. The crux of Marquez's argument is that he "was not charged in his indictment in connection with any rape, nor has he ever been charged with rape, much-less ever found guilty in connection with any rape, and yet his counsel failed to object to the AUSA's unsubstantiated statement referencing 'the time he raped you' during redirect." *Id.* at 65.

H.C.P. described in direct examination how, when Marquez forced her to engage in sexual intercourse with him for the first time, she sustained vaginal tearing. Gov't's Resp., Ex. 27 (Direct Examination of H.C.P.), pp. 28–31, ECF No. 374-27. Then, on redirect, H.C.P. agreed with the prosecutor's characterization of the forced sexual intercourse as rape:

> Q. And Mr. Jewkes also asked you whether or not the defendant ever harmed you, right?
> A. Yes.
> Q. And I think you said no?
> A. Not to beat me up, no.
> Q. What about the time he raped you, was that harmful?
> A. Yes.

*Id.*, at 56.

Absent from Marquez's claim is mention of the Government's two notices of intent to use evidence pursuant to Federal Rules of Evidence 404(B) and 609. Gov't's Resp., Ex. 41 (Notice of

Intent), ECF No. 374-40; *Id.*, Ex. 56 (Second Notice of Intent), ECF No. 374-54 . In relevant part,

paragraph 13 of the first notice reads, "[o]n or about April 1, 2010, Defendant sexually assaulted H.C.P.,

forcing her to have sexual intercourse with Defendant against her will." *Id.*, Ex. 41, pp. 3–4, ECF No.

374-40.

On November 11, 2013, the Court deemed paragraph 13 of the first notice to be intrinsic

evidence and thus admissible:

> The Government seeks to admit evidence that on or about April 1, 2010, Defendant
> sexually assaulted H.C.P., forcing her to have sexual intercourse with Defendant against
> her will; that on or about April 1, 2010 and continuing through on or about August 31,
> 2011, he would make threats to H.C.P. regarding law enforcement and immigration; that
> on or about April 1, 2010 and continuing through on or about August 31,201, he would
> make threats to H.C.P. about having other women beat up if they tried to quit working for
> him; that on or about April 1, 2010, he lured H.C.P. to work for him under false pretenses,
> namely his employment advertisement was for a caretaker when in fact he was seeking to
> hire women for prostitution; and that Defendant knew that H.C.P. was an alien with no
> legal status to work in the United States while H.C.P. was employed by Defendant from
> on or about April 1, 2010 and continuing through on or about August 31, 2011. The
> Government maintains this evidence is intrinsic, and thus, not subject to 404(b) analysis.
> The court agrees.

*Id.*, Ex. 42 (Order Regarding Government's Use of 404(B) Evidence), p. 20-21, ECF No. 374-41. As a

result, there was nothing objectionable about the prosecutor's use of the term "rape."

Furthermore, Marquez's counsel *did* object to the discussion about the sexual assault and re-

urged the objection to the admission of the evidence prior to H.C.P. testifying. *Id.*, Ex. 43 (Trial Tr.),

pp. 3-4, ECF No. 374-42. But "unflattering characterizations of a defendant will not provoke a reversal

when such descriptions are supported by the evidence." *United States v. Windom*, 510 F.2d 989, 994

(5th Cir. 1975). As the notice and H.C.P.'s testimony both describe forcible sexual intercourse, the

evidence supports the characterization of the incident as a "rape." As Jewkes points out, "a defense

objection as to the prosecutor's use of the term 'rape' probably would not have been sustained by the

Court, as the terms 'rape' and 'sexual assault' are commonly interchangeable in criminal trials, or at the very least, harmless error." Gov't's Resp., Ex. 32 (Aff. of Richard Jewkes), p. 4, ECF No. 374-31. "[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness." *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). As such, Marquez's ineffective assistance of counsel claim lacks merit.

Marquez next argues that his "substantial rights" were affected by the Government's use of the term "rape." Mem. in Supp. 67–69, ECF No. 349. He focuses his analysis on purported prosecutorial misconduct. He makes no ineffective assistance of counsel claim. As discussed immediately above, the Government sought and obtained permission from the Court to discuss the April 1, 2010, incident. The prosecutor's characterization was not improper. Hence, Marquez's claim has no merit.

### 11. Failure to demand evidence he engaged in the prostitution business

Marquez next asserts "the essential aspect of the defense counsel's failure to attack such [lack of material evidence] was their lack of investigation in the case." *Id.*, at 70. Liberally construing Movant's claim, it appears he is claiming his counsel were deficient for failing to object to a lack of non-testimonial evidence presented at trial.

Marquez provides no case law to support his claim. Indeed, case law explains "[t]he standard of review of the sufficiency of the evidence in a criminal case is whether a 'reasonable trier of fact could [have found] that the evidence establishe[d] guilt beyond a reasonable doubt.'" *United States v. Michelena-Orovio*, 719 F.2d 738, 742 (5th Cir. 1983) (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc)). There is no requirement that evidence take a specific form. Witness testimony is legally sufficient so long as a reasonable trier of fact could find the evidence established guilt beyond a reasonable doubt. *See United States v. Saenz*, 747 F.2d 930, 935 (5th Cir. 1984) ("In

examining the appellants' attack on the sufficiency of the evidence, we must decide whether 'a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.' *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S. Ct. 2398, 76 L.Ed.2d 638 (1983) (footnote omitted). In doing so, we must view the evidence and the inferences that may be drawn from it in the light most favorable to the jury verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L.Ed. 680 (1942).").

Regardless, as Jewkes points out, the Government offered more than testimonial evidence:

[T]he government offered documentary evidence in the form of prostitution enterprise business ledgers and records that had been prepared under the direction of Mr. Marquez and Backpage.com' advertisements also secured under his direction. In addition to the above, the government offered photographic evidence at trial of Mr. Marquez transporting a female witness through a U.S. Border Patrol checkpoint located on U.S. Highway 54 near Oro Grande, New Mexico. The witness testified at trial that he transported her to Albuquerque, New Mexico for the expressed purpose of selling her sexual services.

Gov't's Resp., Ex. 32 (Aff. of Richard Jewkes), pp. 4–5. ECF No. 374-31. Moreover, the exhibit list is replete with recorded calls, surveillance photos, border crossing histories, ledgers, photos taken from Marquez's digital media, photos of Marquez taken by victims, computer forensic reports of Marquez's computers, newspaper records, Backpage records, and text message exchanges.

Marquez's claim is neither based in neither fact nor law. He is not entitled to relief on this claim.

### Claim IV - Trial counsel failed to challenge the defective Superseding Indictment.

Marquez claims he "received more than one sentence for a single offense because his counsel[ ] failed to challenge the defective indictment, which they allowed the Petitioner to be tried under." Mem. in Supp. 71, ECF No. 349. He argues Counts One, Two, and Three "are exactly the same and continuous crimes." *Id.* Consequently, he "has been given multiple

sentences for the same offense." Furthermore, "[t]he different charges for 'sex trafficking' merged with the Petitioner's conviction in count 4 of the superseding indictment." *Id.* at 72–73.

"The focus in determining the issue of multiplicity is on the statutory elements of the offenses, not on their application to the facts of the specific case before the court." *United States v. Soape*, 169 F.3d 257, 266 (5th Cir. 1999).

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' When the legislature writes two criminal statutes, and each statute contains an independent element from the other statute, we presume that it intends to define two separate offenses that generally entail two punishments. . . . The fact that 'there is a substantial overlap in the proof offered to establish the crimes' does not prohibit conviction and punishment for both.

*Id.* (internal citations omitted). In other words, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

The grand jury charged Marquez with sex trafficking a child, specifically C.V.C., in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), and (b)(2) (Count One); sex trafficking A.R.Q.P. by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), and (b)(1) (Count Two); sex trafficking K.E.G.S. by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), and (b)(1) (Count Three); transporting I.G. for prostitution, in violation of 18 U.S.C. § 2421 (Count Four); coercing and enticing R.I.A.O. to travel in interstate commerce to engage in prostitution and sexual activity, in violation of 18 U.S.C. § 2422(a) (Count Five); conspiracy to coerce and entice a person, H.C.P., to travel in interstate commerce to engage in prostitution and sexual activity, in violation of 18 U.S.C. § 371 (Count Six); and importation of an alien, H.C.P., for immoral purpose, in violation of 8 U.S.C. §

1328 (Count Seven).   Superseding Indictment, ECF No. 74.

Applying the *Soape* test to this case, it is clear there is no multiplicity problem with the superseding indictment.   Using the most simplistic analysis available, all the charges require unique elements to prove.   Count One charges a separate offense than Counts Two and Three.   Count One requires proof of knowledge, or a reckless disregard of the fact, that the victim was under eighteen years of age.   Counts Two and Three do not require that element.   But Counts Two and Three require proof that means of "force, threats of force, fraud, and coercion, and any combination thereof" were used to cause the victim to engage in a commercial sex act—an element not required in Count One.   Even ignoring that Counts Two and Three occurred during different time periods with different victims, the Court need not look at whether Counts Two and Three are multiplicious, as the Court acquitted Marquez of Count Three.   Counts One through Five involve different victims.   Counts Six and Seven have substantial overlap in the elements.   But as the *Soape* Court points out, that alone "does not prohibit conviction and punishment for both crimes."   *Soape*, 169 F.3d at 266.   As Counts Six and Seven both contained independent, unique elements between them there is no multiplicity here.

Marquez argues that because the Government suggested he was involved in a single "business enterprise," any conduct which occurred during the business enterprise can only constitute one offense.   Mem. in Supp. 72–73, ECF No. 349.   But he provides no legal support for his conclusion.

Marquez also attempts to link his arguments to *Bell v. United States*, 349 U.S. 81 (1955), but he misconstrues the holding.   In *Bell*, the defendant "pleaded guilty to violations [of the Mann Act, 18 U.S.C. § 2421,] in two counts, each referring to a different woman [where Bell] transported the two women on the same trip and in the same vehicle."   *Id.*, at 82.   The Supreme Court held that transporting two women on the same trip and in the same vehicle in violation of the Mann Act

-29-

constituted a single offense.  *Id.*, at 84.  Marquez was charged with a violation of the Mann Act in

Count Four, but the charge was for one trip with one victim, I.G.  Though Counts Five and Six overlap

in time, they are not for the same "trip" as in Count Four.  Moreover, unlike Bell, Marquez was not

charged with multiple counts of violating 18 U.S.C. § 2421.  Count Four is a completely different and

distinct act from those described in Counts Five and Six of the superseding indictment.  There is no

doubt that Count Four has completely different elements than Counts Five and Six; thus, under *Soape*

and *Blockburger,* they are not multiplicious.

Under the second *Strickland* prong, the "defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694.  Any objection by counsel to the superseding indictment as

multiplicious would have been unavailing.  "Failure to raise meritless objections is not ineffective

lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).  Marquez

cannot show his counsel's performance was either deficient or prejudiced his cause.  He has not met his

burden of showing his counsel provided ineffective assistance.

> **Claim V - Trial counsel failed to demand the disclosure of agreements between the Government and its witnesses.**
> **Claim VI - Trial counsel failed to demand the disclosure of the agreement between the government and Ana Rosa Quezada.**
> **Claim VII - Trial counsel failed to demand the disclosure of the agreement between the government and Hossein Tabatabain.**
> **Claim VIII - Trial counsel failed to demand the disclosure of the agreement between the government and Doctor Durwood Spencer.**
> **Claim IX - Trial counsel failed to demand the disclosure of the agreement between the government and Maria and Ronald Blake.**

Marquez alleges his counsel were ineffective because they failed to demand the disclosure of

agreements between the Government and the witnesses testifying against Marquez for reductions in their

sentences under Sentencing Guideline § 5K1.1 for their assistance in his prosecution. Mem. in Supp. 74–75, ECF No. 349.

Marquez bases his claim on the flawed assumption that the witnesses for the prosecution entered into agreements to testify against him. In fact, at the time of Marquez's trial, none of the Government's witnesses had received a § 5K1.1 agreement. Dr. Durwood Spencer agreed to testify in hopes of receiving a § 5K1.1 agreement on his unrelated case concerning healthcare fraud and money laundering. *United States v. Spencer*, EP-13-CR-00286-KC-1 (W.D. Tex.). Mirtha Rocio Reyes, Dr. Spencer's common-law wife, agreed to testify in hopes of securing an agreement for Dr. Spencer. The Government provided this information—along with all other impeachment information on the prosecution's witnesses—in two letters sent to Marquez's counsel before trial. Gov't's Resp., Ex. 26 (Dep't of Justice Letter, Oct. 11, 2013), ECF No. 374-26; *id.*, Ex. 45 (Dep't of Justice Letter, Oct. 31, 2013), ECF No. 44. Marquez's attorney, Jewkes, acknowledges the Government provided this information in his affidavit:

> Mr. Marquez complains that his defense counsel failed to demand disclosure of the agreements between the government and its witnesses Hossein Tabatabain ("Tabatabain"), Dr. Durwood Spencer ("Spencer"), and Maria and Ronald Blake. (Marquez Memorandum, ECF Doc. 349, pp. 76–79). On October 31, 2013, counsel for the government provided correspondence to Mr. Marquez's defense team specifying that Jaime Esparza, 34th Judicial District Attorney, met with counsel for the government on October 30, 2013 and agreed to grant immunity to the following witnesses for offenses related to prostitution: Hossein Tabatabain, Jesus Antonio Yanez, Durwood Spencer, [C.V.C.], [A.R.Q.P.], [B.G.G.T.], and [H.C.P]. Tabatabain testified on direct examination during the trial that the state prosecutor had offered an immunity agreement to him in exchange for his cooperation in the federal case. (Trial Transcript, Vol. 3, ECF Doc. 256, pp. 48–50). Spencer testified on direct examination that he had pled guilty in a federal healthcare fraud case in the Western District of Texas, was awaiting sentencing in the case, and he had entered into a proffer agreement with the government with the possibility of receiving U.S.S.G. § 5Kl.1 sentencing consideration in exchange for his testimony. (Trial Transcript, Vol. 5, ECF Doc. 258, pp. 132–136). I cross-examined Spencer and developed the fact that, in conjunction with the healthcare fraud prosecution, he also had

pled guilty to a federal money laundering charge and acknowledged that he was aware that the state prosecutor had extended an immunity agreement to him in a prostitution-related investigation. (Trial Transcript, Vol. 5, ECF Doc. 258, pp. 142-143).

Gov't's Resp., Ex. 32 (Aff. of Richard Jewkes), ECF No. 374-31.

Dr. Spencer then testified at Marquez's trial that he knew there was a possibility he would receive a "lighter sentence" in his health care fraud and money laundering case as a result of his testimony against Marquez. *Id.*, Ex. 46 (Testimony of Durwood Spencer), pp. 5–8, 15–16, ECF No. 374-45.

Indeed, Marquez's claims are factually incorrect. The record shows there were no agreements between the Government and the witnesses testifying against Marquez for reductions in their sentences. Thus, he cannot show the performance of his counsel was either deficient or prejudiced his case. He is not entitled to relief on these claims.

### Claim X - The cumulative effect of the foregoing ineffectiveness of trial counsel rendered the trial fundamentally unfair.

Marquez argues the cumulative effect of the errors of his counsel warrant § 2255 relief. Mem. in Supp. 79, ECF No. 349. In support of his argument, Marquez restates his previous ineffective assistance of counsel claims while adding a few new, meritless, ones. *Id.*, at 79–87.

"[T]he cumulative error doctrine . . . provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998) (citations omitted). On claims of cumulative error, a court reviews "the record as a whole to determine whether the errors more likely than not caused a suspect verdict." *Derden v. McNeel*, 978 F.2d 1453, 1457 (5th Cir. 1992) (en banc) (citation omitted).

The Fifth Circuit has recognized the concept of cumulative error in the context of a petition for a writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.  *Id.*, at 1454. "[F]ederal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension . . .; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'"  *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993) (quoting *Derden*, 978 F.2d at 1454 (citation omitted)).   Indeed, "a habeas petition may not just complain of unfavorable rulings or events in the effort to cumulate errors." *Id.*  To the extent such concepts apply in the context of a § 2255 proceeding, a movant must establish errors of constitutional dimension which so infect the conduct of a federal criminal proceedings that they may be cumulated.  *See United States v. McIntosh*, 280 F.3d 479, 484 (5th Cir. 2002) ("McIntosh also claims cumulative error.   He has not established any error; therefore, there is nothing to cumulate.") (citation omitted).

After reviewing the record, the Court finds the purported errors by counsel identified by Marquez did not cause a suspect verdict.    In fact, the Court finds none of Marquez's ineffective assistance of counsel claims had merit.   Thus, although Marquez claims cumulative error, he has not established *any* error, much less *any* error of constitutional dimension.   Because there is nothing to cumulate, the cumulative error doctrine simply does not apply.    *Id.*  Marquez is not entitled to relief on this claim.

**Claim XI- Appellate counsel provided ineffective assistance by refusing to raise an issue that required reversal on direct appeal; failing to challenge the sufficiency of the evidence; failing to address the ineffective assistance of trial counsel at sentencing; failing to investigate the entire court record; failing to challenge the sentences; and**

**failing to challenge the sufficiency of the evidence to support the conspiracy conviction.**

Marquez next complains his appellate counsel were ineffective when they failed to (1) appeal the constructive amendment to Count One, (2) appeal the sufficiency of the evidence, (3) address the ineffective assistance of his counsel at his sentencing, (4) investigate the entire court record, (5) renew and challenge the sentencing under *Booker*, and (6) failure to challenge insufficiency of conspiracy. Mem. in Supp. 88–102, ECF No. 349.

The *Strickland* standard is also used to evaluate claims for ineffective assistance of appellate counsel. *Blanton v. Quarterman*, 543 F.3d 230, 240 (5th Cir. 2008). "To make out a claim for ineffective assistance of appellate counsel, a defendant must show (1) 'that counsel's performance was deficient' and (2) 'that the deficient performance prejudiced the defense.'" *Higgins v. Cain*, 720 F.3d 255, 260–61 (5th Cir. 2013) (quoting *Strickland*, 466 U.S. at 687).

### 1. Refusing to raise an issue that required reversal on direct appeal

Marquez first asserts his appellate counsel provided ineffective assistance when they failed to appeal the constructive amendment to Count One of the superseding indictment. *Id.*, at 88–90. He relies on the Fifth Circuit's opinion—issued *after* the Fifth Circuit denied his appeal—in the appeal of Timothy McCullouch in *United States v. Lockhart*, 844 F.3d 501 (5th Cir. 2016).

Count One charged Marquez with sex trafficking of children, in violation of 18 U.S.C. § 1591(a). Superseding Indictment, ECF No. 74. Subsection (a) of § 1591 "allow[ed] the Government to prove scienter by showing that the defendant (1) knew the victim was underage, [or] (2) recklessly disregarded that fact." *Lockhart*, 844 F.3d at 513–14. Subsection (c) of § 1591—not alleged in the superseding indictment—added that "[i]n a prosecution under subsection (a)(1) in which the defendant had a

reasonable opportunity to observe the person . . . the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years." 18 U.S.C. § 1591(c). The Court's instruction to the jury on Count One included the "reasonable opportunity to observe" language from Subsection (c).

McCullouch was also charged with a violation of 18 U.S.C. § 1591(a), not § 1591(c). McCulloch's conviction was vacated on direct appeal because the jury instruction also included the "reasonable opportunity to observe" language from Subsection (c). *Id.* at 515–16. The Fifth Circuit reasoned that it was "conceivable that someone could recklessly disregard a person's age without having a reasonable opportunity to observe him or her." *Id.* Thus, it concluded, the Court's instruction permitted the jury to convict on a basis that was permitted by the statute, but, was not charged in the indictment. *Id.*

"Ever since *Ex parte Bain*, 121 U.S. 1, . . . was decided in 1887, it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215–16 (1960). "A constructive amendment occurs when [a court] permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which she was charged." *United States v. Thompson*, 647 F.3d 180, 184 (5th Cir. 2011) (citation and internal quotation marks omitted).

The Government concedes *Lockhart* makes the addition of Subsection (c) language in Marquez's jury charge a constructive amendment to the superseding indictment. Gov't Resp. 22, ECF No. 374-1. If Marquez's trial counsel had objected to the inclusion of the "reasonable opportunity to observe" language from Subsection (c), then his appellate counsel could have raised the issue on direct appeal.

And—based on the Fifth Circuit's subsequent decision in *Lockhart*—Marquez's conviction pursuant to Count One could have been vacated on appeal. Accordingly, Marquez can show that he faced prejudice as a result of his counsel's failure to object to the inclusion of "reasonable opportunity to observe" in the jury charge.

For Marquez to successfully raise an ineffective assistance of counsel claim, he must also establish that his counsel's conduct fell outside the realm of reasonable professional conduct. A lawyer's performance is not deficient if he fails to anticipate developments in the law or fails to make an objection based on unsettled law. *See United States v. Fields*, 565 F.3d 290, 296 (5th Cir. 2009) (collecting cases); *Givens v. Cockrell*, 265 F.3d 306, 309 (5th Cir. 2001) (determining that the petitioner's counsel's performance was not deficient when the counsel failed to object to evidence but the law was unsettled regarding whether such evidence was permitted); *Burton v. Thaler*, 863 F. Supp. 2d 639, 654 (S.D. Tex. 2012) ("[N]o *Strickland* deficient performance occurs when trial counsel fails to raise an objection based on unsettled law.") (internal quotations and citations omitted)).

If an issue is novel, then the question of law is generally considered unsettled. Consequently, an attorney's performance is not deficient if he fails to raise the issue. In fact, courts in this District have specifically held that "counsel's failure to anticipate a rule of law that has yet to be articulated by the governing courts, and failure to raise a novel argument based on admittedly unsettled legal questions does not render his performance constitutionally ineffective." *Gutierrez v. Davis*, No. A-16-CA-488-LY, 2017 WL 2637849, at *19 (W.D. Tex. June 19, 2017) (citing *Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014) (internal quotations and citations omitted)); *see also Esquivel v. United States*, No. EP-03-CR-1757-FM, 2005 WL 1750383, at *4 (W.D. Tex. July 26, 2005) (stating that the petitioner could not show that his attorney's "failure to raise a then-novel . . . claim" fell below an objectively

reasonable standard of performance). This remains true even if the legal issue is a novel application of existing case law. *Gonzales v. Collins*, 14 F.3d 55 (5th Cir. 1994) ("[A]n attorney's failure to anticipate ·novel applications of existing case law does not amount to deficient performance under *Strickland*.").

Marquez cannot establish that his trial counsel's conduct was deficient because—at the time of his trial and his direct appeal—case law did not make clear that the inclusion of "reasonable opportunity to observe" language was improper. To be sure, case law explains that a jury charge permitting a defendant to be convicted based on conduct not charged in the indictment constructively amends the indictment. *See Lockhart*, 844 F.3d at 514–16 (discussing case law). But the Fifth Circuit had not yet considered the inclusion of the "reasonable opportunity to observe" language in a jury charge. Notably, in *Lockhart*, the Fifth Circuit does not discuss any cases considering the "reasonable opportunity to observe" language. *See generally id.* Thus, the legal issue was a novel application of existing case law.

Moreover, the performance prong of the *Strickland* test requires counsel's performance to be "objectively unreasonable." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Thus, while it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim" on appeal, "it is difficult to demonstrate that counsel was incompetent." *Id.* at 288.

In sum, while Marquez's counsel failed to raise the constructive amendment issue, existing case law did not speak to the precise issue. Thus, in light of the "objectively unreasonable" standard, the Court finds that Marquez's appellate counsel were not ineffective in failing to identify the issue for appeal.

## 2. Failure to challenge the insufficiency of the evidence

Marquez contends his appellate counsel were ineffective for failing to challenge the sufficiency of the evidence on each count on appeal. Mem. in Supp. 90–91, ECF No. 349.

The Supreme Court addressed the duty of appellate counsel to raise every issue a defendant deems important in *Jones v. Barnes*:

> Defense Counsel assigned to prosecute an appeal from a criminal conviction does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant. The accused has the ultimate authority to make certain fundamental decisions regarding his case, including the decision whether to take an appeal; and, with some limitations, he may elect to act as his own advocate. However, an indigent defendant has no constitutional right to compel appointed Counsel to press nonfrivolous points requested by the client, if Counsel, as a matter of professional judgment, decides not to present those points . . . . Experienced advocates have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Selecting the most promising issues for review has assumed a greater importance in an era when limits on briefs are widely imposed.

*Jones v. Barnes*, 463 U.S. 745, 745–46 (1983).

Though Marquez may truly believe a sufficiency of the evidence claim was important, his appellate counsels' decision to forgo that claim in favor of other arguments falls under the wide umbrella of professional judgment.

Moreover, Marquez was not prejudiced by his appellate counsel's failure to raise a sufficiency of the evidence claim:

> Sufficiency review essentially addresses whether the government's case was so lacking that it should not have even been submitted to the jury. On sufficiency review, a reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a meaningful opportunity to defend against the charge against him and a jury finding of guilt beyond a reasonable doubt. The reviewing court considers only the legal question whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. That limited review does not intrude on the jury's role to

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Musacchio v. United States*, 136 S. Ct. 709, 715 (2016) (internal citations, quotations, and quotation marks omitted).

Applying the *Musacchio* standard, Marquez would not have prevailed on the six sufficiency of the evidence arguments he now suggests his appellate counsel should have raised in his appeal.

First, Marquez argues his appellate counsel should have challenged the Government's assertion that C.V.C. looked under eighteen. Mem. in Supp. 91, ECF No. 349. But the Fifth Circuit would have resolved this claim in the light most favorable to the Government and it would not have evaluated the weight the jury gave to the evidence. *Musacchio,* 136 S. Ct. at 715.

Second, Marquez claims the Government failed to prove force, fraud, *and* coercion. Mem. in Supp. 91, ECF No. 349. Count Three of the Superseding Indictment did allege Marquez:

> in and affecting interstate and foreign commerce, did knowingly recruit, entice, harbor, transport, provide, and obtain by any means a person, K.E.G.S., and did benefit financially from participation in a venture which recruited, enticed, harbored, transported, provided, and obtained by any means a person, K.E.G.S., *knowing that means of force, threats of force, fraud, and coercion, and any combination thereof,* would be used to cause K.E.G.S., to engage in a commercial sex act . . .

Superseding Indictment, ECF No. 74 (emphasis added).

The relevant criminal statute, 18 U.S.C. § 1591, reads:

(a) Whoever knowingly–

(1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially . . . from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any

combination of such means will be used to cause the person to engage in a commercial sex act . . . shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Subsection (b) prescribes the mandatory minimum sentences for sex trafficking by force:

(b) The punishment for an offense under subsection (a) is–

(1) if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means . . . by a fine under this title and imprisonment for any term of years not less than 15 or for life . . .

18 U.S.C. § 1591(b). To sustain a conviction under § 1591, the government must prove that (1) "the defendant knowingly recruited, enticed, harbored, transported, obtained or maintained [the victim];" (2) "the recruiting, enticing, harboring, transporting, providing, obtaining or maintaining of [the victim] was in or affecting interstate or foreign commerce," and (3) "the defendant committed such act knowing or in reckless disregard of the fact that" either (a) "the [victim] . . . would be caused to engage in a commercial sex act" or "means of force, threats of force, fraud, coercion . . . or any combination of such means [would] be used to cause the [victim] to engage in a commercial sex act." *Lockhart*, 844 F.3d at 509; *Garcia-Gonzalez*, 714 F.3d at 312. "Subsection (b)(1) requires the government to prove that the defendant knew or recklessly disregarded the fact that the offense would be effected by means of force, fraud, *or* coercion." *United States v. Keys*, 747 F. App'x 198, 205–06 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 847, 202 L. Ed. 2d 614 (2019). Consequently, the Government need not prove force, fraud, *and* coercion.

Furthermore, the evidence at trial showed Marquez kept the victims working for him through threats of violence or deportation. He punished the women who angered him by sending them all the clients who wanted sex that day. He threatened the women who asked to leave by implying he had

friends who could arrest or deport them. He even told one woman he had friends in a drug cartel in Juarez. He made the women believe he would harm them if they ever crossed him. Indeed, the evidence showed Marquez used force, fraud, *and* coercion to maintain his control over his victims.

Third, Movant's asserts his appellate counsel should have challenged the conclusion that I.G. was transported in interstate commerce. *Id.* But that assertion fails when viewing the evidence in the most favorable light to the prosecution and, again, the Fifth Circuit would not evaluate the weight the jury gave to the evidence presented at trial. *Musacchio,* 136 S. Ct. at 715.

Fourth, Marquez argues his appellate counsel should have highlight discrepancies between the testimony of the witnesses. Mem. in Supp. 91, ECF No. 349. But the Fifth Circuit would not have "intruded on the jury's role to resolve conflicts in the testimony." *Musacchio,* 136 S. Ct. at 715.

Fifth, Marquez's argument that his appellate counsel failed to argue the lack of co-defendants showed there was no conspiracy also exhibits a misunderstanding of the law. Mem. in Supp. 91, 99–102, ECF No. 349. But the superseding indictment named Martha Jimenez Sanchez a co-conspirator, and, described her involvement in several overt acts in the conspiracy. Superseding Indictment, ECF No. 74.

Finally, Marquez's argument that his appellate counsel failed to argue that H.C.P. was no longer working for him at the time of her arrest has nothing to do with a sufficiency of the evidence. And his trial counsel could not mention it during trial due to the motion in limine. Moreover, the Fifth Circuit would not have addressed this argument as an attack on H.C.P.'s credibility as it would not intrude upon the jury's providence to judge the credibility of witnesses. *Musacchio,* 136 S. Ct. at 715.

Consequently, Marquez could not have prevailed on any of arguments that he now wishes his appellate counsel would have raised. Therefore, Marquez cannot meet either prong of *Strickland* and he is not entitled to relief.

### 3. Failure to assist at sentencing

Marquez alleges his trial counsel provided ineffective assistance at sentencing. Mem. in Supp. 92–93, ECF No. 349. Yet he merely lists the obligations placed upon the Government and defense counsel during the sentencing phase of trial. He makes no attempt to suggest what either party did wrong, should have done differently, or should have added. Though *pro se* pleadings are read liberally, there is no colorable claim here. As Marquez provides little more than what he believes the obligations are for each party; there is nothing for the Court to rule on.

### 4. Failure to review the docket

Marquez alleges his appellate counsel was ineffective for failing to review the entire record. Mem. in Supp. 93–94, ECF No. 349. His proof is that he was unable to obtain a complete docket from the clerk's office. *Id.* He surmises a "secret docket" exists that neither he nor, by extension, his appellate counsel could access. *Id.*

Most of the documents Marquez claims are unavailable are, in fact, publicly available. Six of the documents are sealed and pertain to his co-defendant, Martha Jimenez Sanchez. He could likely obtain them after filing an appropriate motion to unseal them with the Court. Marquez's suggestion that these documents are "secret" and unavailable is simply untrue. Thus, he cannot meet either prong of *Strickland* and he is not entitled to relief.

## 5. Failure to raise an *Apprendi* or *Booker* claim

Marquez argues his appellate counsel provided ineffective assistance by failing to challenge his sentence under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *United States v. Booker*, 543 U.S. 220 (2005), and their progeny.  Mem. in Supp. 94–99, ECF No. 349.

The decision by appellate counsel to forgo a claim in favor of other arguments falls under the wide umbrella of professional judgment.  *Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal").  Thus, Marquez's appellate counsel were not deficient in their performance by merely failing to raise issues and he cannot meet the first prong of *Strickland*.  Moreover, Marquez was not prejudiced.  He conflates the requirement that a jury make a finding on anything that raises the statutory maximum and the application of specific offense characteristics in the Sentencing Guidelines:

> The Guideline range should be determined in the same manner as before *Booker/Fanfan*. Relatedly, *Booker* contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts relevant to sentencing.  The sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence.

*United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005) (internal citations omitted).

Essentially, Movant makes a reasonableness of the sentence argument.  Post *Booker*, the Sentencing Guidelines are no longer mandatory.  However, "[a] sentence within the Guidelines range is presumptively reasonable, and this presumption is rebutted only if the appellant demonstrates that the sentence does not account for a factor that should receive significant weight, gives significant weight to an irrelevant or improper factor, or represents a clear error of judgment in balancing sentencing factors."

-43-

*United States v. Hernandez*, 876 F.3d 161, 166 (5th Cir. 2017). Though Marquez's six consecutive

sentences were at the statutory maximum, they were also within the properly calculated Guidelines

range. Gov't's Resp., Ex. 40 (Presentence Investigation Report), ECF No. 374-39. Hence, the Court's

sentence was presumptively reasonable.

Moreover, Marquez's appellate counsel *did* appeal the reasonableness of the sentence in this

case. The Fifth Circuit rejected the argument:

> At trial and sentencing, numerous witnesses testified that Marquez threatened and withheld
> pay from employees and raped or coerced women into sex. Marquez cites no case law to
> support his argument. The district court heard and took into account the statements and
> testimony of the victims and the arguments made by defense Counsel and Marquez himself,
> as well as the 18 U.S.C. § 3553(a) factors, when determining that a within guidelines
> sentence was appropriate . . . Accordingly, Marquez has not demonstrated error, much less
> plain error.

*Marquez*, 667 F. App'x at 498. Marquez's Counsel made, and lost on, the argument

Marquez suggests that Counsel failed to raise. He cannot show their performance was either deficient

or prejudiced his cause.

Finally, Marquez's complaint is not about the statutory maximum sentence—the focus of

*Apprendi*—but about the Court's application of specific offense characteristics and calculation of his

sentence under the Sentencing Guidelines. *Id.*, at 98–99. Neither *Apprendi, Booker*, nor their progeny

made it unconstitutional—as Marquez suggests—for the Court to find specific offense characteristics by

a preponderance of the evidence. The Court properly calculated the Guidelines range, and Marquez

makes no argument to the contrary.

Marquez cannot meet either prong of *Strickland* and he is not entitled to relief.

## MOTIONS TO AMEND

Marquez sought leave of the Court to amend his § 2255 motion on December 14, 2018, January 7, 2019, and March 25, 2019. Mot. to Amend, ECF No. 410; Second Mot. to Amend, ECF No. 412; Third Mot. to Amend, ECF No. 414. Marquez wanted to add a claim that his trial counsel provided ineffective assistance when they failed to investigate and discover "that there was 'NO PROBABLE CAUSE' linking the petitioner to any criminal activity, and would have then filed pretrial motions to suppress 'All Evidence' and move[d] to dismiss said petitioner's indictment and possibly granted by the Honorable Court." Third Mot. to Amend 11, ECF No. 414. In support of his claim, he attaches the application for a search warrant originally filed in the Court on June 20, 2012. *Id.*, at 12–21.

A § 2255 motion is subject to a one-year limitations period. 28 U.S.C. § 2255(f). A federal prisoner must file his motion within one year from the date on which (1) the judgment became final; (2) the government-created impediment to filing the motion was removed; (3) the United States Supreme Court initially recognized, and made retroactively applicable to cases on collateral review, the legal predicate for the motion; or (4) the movant could have discovered, through due diligence, the factual predicate for the motion. *Id.*

The one-year limitations period is not jurisdictional and is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling is not, however, available for "'garden variety claims of excusable neglect.'" *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (quoting *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). It "is permitted only 'in rare and exceptional circumstances.'" *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)). Such circumstances include situations in which a movant

is actively misled by the respondent "'or is prevented in some extraordinary way from asserting his rights.'" *Id.* (quoting *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999)).

In most cases, § 2255's limitations period begins to run when the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 524 (2003). A judgment becomes final when the applicable period for seeking direct review expires. *Clay*, 537 U.S. 522 at 525; *United States v. Gamble*, 208 F.3d 536, 536–37 (5th Cir. 2000) (per curiam).

The Court entered Marquez's judgment on September 4, 2014. J. Crim. Case, ECF No. 314. His conviction became final on March 27, 2017, when the Supreme Court denied his petition for a writ of certiorari. *Marquez v. United States*, 137 S. Ct. 1387 (2017). *United States v. Johnson*, 457 U.S. 537, 542 n.8 (1982). As a result, Marquez's time for filing a § 2255 motion within one year after his conviction became final expired on March 27, 2018. The Court deems Marquez's first motion for leave to amend filed on December 4, 2018, the day he signed the certificate of service and presumably placed it in the prison mail system. *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (citing *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir.1998)). Marquez clearly did not file his motion for leave to amend within one year of his conviction becoming final.

Marquez does not suggest a government-created impediment prevented him from timely filing his motion. 28 U.S.C. § 2255(f)(2). He does not assert his motion is timely because the Supreme Court initially recognized the legal predicate for his motion and made it retroactively applicable to cases on collateral review within the past year. *Id.* § 2255(f)(3). Marquez does, however, claim he recently discovered the factual predicate for his amendment—the application for a search warrant filed in the Court on June 20, 2012. Third Mot. to Amend 7, ECF No. 414. Consequently, he suggests his motion to amend is timely under 28 U.S.C. § 2255(f)(4). *Id.* But the facts supporting Marquez's

claim could have been discovered years ago through due diligence. And Marquez did not submit this claim until March 25, 2019 . A delay of nearly eight years in discovering a search warrant is unreasonable.

Still, untimely claims may be added to a timely filed proceeding and considered on the merits if such claims "relate back" to the claims that were timely filed. Under Fed. R. Civ. P. 15(c), "[r]elation back causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed." *United States v. Davenport*, 217 F.3d 1341, 1344 (11th Cir. 2000). "An amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). Claims alleged in an amended § 2255 motion "will relate back and be considered timely if they 'arose out of the conduct, transaction, or occurrence' set forth in [the] original § 2255 motion." *Davenport*, 217 F.3d at 1344.

In *Mayle v. Felix*, 545 U.S. 644, 654–656 (2005), the Supreme Court made it clear that the "relation back" doctrine in Federal Rule of Civil Procedure 15(c) applies to federal habeas corpus proceedings. The Supreme Court also made it clear, however, that "[a]n amended habeas petition . . . does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. The relation back doctrine is strictly construed in federal habeas corpus proceedings. *United States v. Ciampi*, 419 F.3d 20, 23–24 (1st Cir. 2005).

Here, the claim Marquez proposes to include in this § 2255 proceeding differs in both time and type from the claims in his original, timely § 2255 motion. *See United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) ("New claims of ineffective assistance of counsel do not automatically relate

back to prior ineffective assistance claims simply because they violate the same constitutional provision. Rather, we must look to whether Gonzalez' new claim asserts 'a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'"). Therefore, the new claim made the basis of Marquez's amendment does not "relate back" to his original § 2255 motion. Consequently, his new claim is time barred. Therefore, the Court will deny Marquez's motions for leave to amend his § 2255 motion.

## EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the defendant is not entitled to relief. *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (holding that there was no abuse of discretion in denying a § 2255 motion without a hearing where the movant's assertions of ineffective assistance were wholly conclusory in nature and refuted by reference to the record itself). The record in this case is adequate to dispose fully and fairly of Marquez's claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a movant's constitutional claims on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings). To warrant a certificate as to claims that a district court rejects solely on procedural grounds, the movant

must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Marquez's § 2255 motion fails because he has not identified a transgression of his constitutional rights or alleged an injury that would, if condoned, result in a complete miscarriage of justice. Additionally, reasonable jurists could not debate the Court's reasoning for the denial of Marquez's § 2255 claims on substantive or procedural grounds—or find that his issue deserves encouragement to proceed. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Thus, the Court will not issue a certificate of appealability.

## CONCLUSION AND ORDERS

Marquez is procedurally barred from attacking the alleged defectiveness of the superseding indictment. But, more importantly, the superseding indictment is not deficient as Marquez's factual and legal arguments are incorrect. Marquez is procedurally barred from attacking the constructive amendment in the jury instructions. But, even if he was not, the error was not constitutional in nature warranting reversal. Marquez's counsel were not ineffective for any of the multitude of reasons Marquez asserts, and Marquez suffered no prejudice from the perceived transgressions. Factual inaccuracies and out right fabrications pervade Marquez's numerous arguments regarding his Counsel's failure to demand and the Government's failure to produce various agreements and exculpatory information. The true facts show that no information was suppressed, and Marquez's counsel were not ineffective. Likewise, Marquez's complaints about his sentencing and appellate counsel are filled with factual inaccuracies and misstatements of the law. As such Marquez cannot show any prejudice from his alleged harms. For these reasons, none of Marquez's claims are meritorious.

Accordingly, **IT IS ORDERED** that Movant Charles Marquez's motions to amend his § 2255 Motion (ECF Nos. 410, 412, and 414) are **DENIED**.

**IT IS FURTHER ORDERED** that Movant Charles Marquez is **DENIED** an evidentiary hearing.

**IT IS FURTHER ORDERED** that Movant Charles Marquez's pro se "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody" (ECF No. 348) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Movant Charles Marquez is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SIGNED** this 10th day of September 2019.

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**